Ricketson v. Richardson.

# BARTON RICKETSON v. RICHARDSON, THROCK-MORTON, et als.

WHERE a mortgage was executed to secure three notes—two of them drawing interest at five, and the third at six per cent. per month—and the notes were described·in the mortgage, which was recorded, by their dates, amounts, time of payment, and names of maker and payees; but without further description of the *interest* than as follows : "And if the payment of the amount of the said notes shall be made at maturity, then these presents shall become void, and the estate hereby granted shall cease and utterly determine; but if default shall be made in the payment of the said sum of money, or the *interest*, or any part thereof, at the times hereinbefore specified for the payment thereof," then the mortgagee is empowered to sell, etc., and "out of the money arising from such sale, to retain the principal and *interest* which shall then be due on the said notes :" *Held*, that the mortgage is good against subsequent purchasers from the mortgagor, for the principal and the *conventional interest* stipulated in the notes; that, as the mortgage showed that the notes drew interest, and inferentially *conventional interest*, by providing for the payment of interest at the maturity of the notes, the property was held for the principal and that interest; and as the names of the payees, the dates, etc., were given, the subsequent purchaser or incumbrancer was bound to inquire into the facts and ascertain them.

The case made here is not like the cases where it has been held that if a note be · described in a mortgage, as made or recorded, as a note for a given sum, the mortgagee cannot set up, as against a subsequent purchaser or mortgagee, a different and larger debt.

In describing the indebtedness in a mortgage, literal exactness is not necessary if the description be correct as far as it goes, and if enough be.said to direct the attention of parties subsequently dealing with the property to sources of correct and full information, provided these persons be not deceived, or subject to be misled by the language used.

Richardson, owing $5,000 to Ricketson, conveyed, by his agent Avis, to Ricketson a tract of land—part of the Albion Rancho in California—partly for the purpose of paying this debt, and partly that the land might be sold in the Eastern States. Avis, acting as agent of Richardson, in making the deed to Ricketson, which was in form absolute, took from Ricketson a bond in a penalty of $32,000, payable to Avis himself, conditioned to pay him, his heirs, .assigns, etc., "the full sum of $16,168.00, like money as aforesaid, together ⁻with one-half the profits that may arise from a sale of 16,168 acres of land, situated and being a part or parcel of land in the Albion Rancho, as described in a deed thus made to the said Ricketson by Wm. A. Richardson, for the purpose of effecting sales, if possible; otherwise, said land to be conveyed to the said Wm. Parsons Avis within one year from date :" *Held*, that for any breach of the promise to reconvey, Ricketson is not liable to a fixed penalty of $16,168, but only for the damages sustained by the breach, as in other cases of contract; that the claim is for unliquidated damages.

Ricketson *v.* Richardson.

*Held,* further, that, as Avis took the bond in his own name, and as it imported a direct obligation of conditional reconveyance of the land to him within a year, he would have the same rights to discharge, modify or control the obligation of the contract as he had to make it; and that, as he did direct a reconveyance to himself within a year, and as the reconveyance was accordingly in effect made, the condition of the bond was satisfied.

An unliquidated claim for damages is not the subject of offset, either equitable or legal.

Claims against an estate may be presented to the executor or administrator thereof *before* his publication of notice to creditors to present their claims.

APPEAL from the Seventh District.

Bill against Richardson, Throckmorton, Moss, Hood, Davidson, Young, executor of Walkinshaw deceased, and Torres, executor, etc., to foreclose certain mortgages. All the defendants, except Moss and Throckmorton, claim an interest under subsequent mortgages. Moss claims under a prior mortgage to James Black, and Throckmorton claims as purchaser under an order of sale by deed from the Sheriff, under a foreclosure of a prior mortgage to Myers and Bennett. Throckmorton also claims as a purchaser of the equity of redemption, after all the mortgages, by deed from Richardson. Those claiming under prior mortgages only ask a protection of their interests. The subsequent mortgagees, except Dallas, who withdraws personally all objection to the plaintiff's mortgage, raise the question of the interest to which the plaintiff is entitled.

Most, if not all of the material facts are stated in the opinion of the Court; but it is deemed best to add some items as rendering more intelligible some expressions in the opinion under head two.

The statement in the opinion under head two, that Richardson "treated the land afterwards as his, as appears from his disposition of it in his subsequent deeds and in his will," is based upon the facts that Richardson—1st, by his will of the fifteenth of October, 1853, under which Torres is acting, directs that, in case it shall become necessary to sell any portion of his property to pay his debts, his executors are "to sell, first the Albion Rancho, situate in Mendocino county, or so much thereof as shall be sufficient," making no exception of the 16,168 acres conveyed to the plaintiff by Avis; 2nd, that he mortgaged the same land to Compton &

Davidson, by mortgages of October 13th, 1853, of November 30th, 1853, and of February 1st, 1854, under which Davidson, Hood and Walkinshaw claim by assignment, without excepting the 16,168 acres; 3d, that he professes to convey the equity of redemption to the Saucelito Rancho and to the Albion Rancho, to Throckmorton, by deed of the ninth of February, 1856, after the reconveyance to Compton & Davidson by the plaintiff, without the 16,168 acres being excepted, or referred to—the language as to the latter rancho being: "and also all that tract of land situate in Mendocino county, and State aforesaid, known as the Albion Rancho, and containing twenty leagues of land, more or less, also granted to said William A. Richardson by the Mexican Government, for a more full and accurate description of which, reference is had to the grant and map of the same, now on file in the office of the United States Land Commission, in case 103." And also: "this conveyance, however, is made subject to the following exception and reservation, to wit: reserving and excepting the tract of land heretofore conveyed by said Richardson to —— Parker, by deed bearing date — day of ——, 18—; also the tract of land heretofore conveyed by said Richardson, containing about eighty acres of land, on which the said Torres now resides."

The same language is used in the agreement of the seventh of August, 1855, conveying the whole of the Albion Rancho to Throckmorton. The same, and no other exceptions are made.

The circumstances relative to the deed to Hackett, mentioned in the latter part of the opinion, were that Avis, in June or July, 1856, executed to one Post, two assignments of the bond given by plaintiff to him, and of all the interest of the assignor in the 16,168 acres of land referred to in the condition of the bond—one of these assignments was by Avis, in the name of Richardson, and dated August 15th, 1853; the other was by Avis personally, and dated March 17th, 1856. Both assignments were in fact executed at the same time in 1856—one being antedated.

In the fall of 1857, the assignee in insolvency of Post, finding this bond with these two assignments on it among the assets of Post, sold it at public auction to one Hill, through whom Hackett claimed title to the bond. Hackett, in 1857, in the city of New York,

Ricketson *v.* Richardson.

presented this bond, and also the deed made by plaintiff to Compton & Davidson in 1854, in compliance with the letter of Avis as stated in the opinion—which deed was found among the papers of C. & D., by their agent, and by him delivered to Avis for Hackett— and demanded a new deed to him, Hackett, as the owner of the bond. The deed was made and the bond and old deed delivered up. Subsequently, in February, 1857, Hackett, for $2,250 paid him, reconveyed the land to plaintiff.

Avis was agent of Richardson from May 31st, 1852, to October 1st, 1853—when Compton & Davidson became his agents—under a letter of attorney containing the most ample powers. Compton & Davidson continued to act as agents of Richardson until sometime in 1855. The deed to them by plaintiff was never recorded, as they claimed no interest in the land. They are insolvent. Richardson died in April, 1856.

The allegation in the amended complaint making Torres defendant, as to the presentation of plaintiff's claim to Torres as executor of Richardson, is: "And the plaintiff avers that on the said sixteenth day of March, 1857, his claim against the estate of the said Richardson, for which this suit was instituted, duly sworn to according to law, was presented to Manuel Torres, executor as aforesaid, for his allowance or rejection; and that the said Torres then and there rejected the same by indorsing thereon his said rejection."

On the same day the counsel of Torres signed a stipulation admitting that all the facts stated in this amended complaint were true.

The Court below, on the eleventh of July, 1861, entered a decree of foreclosure for plaintiff in the sum of $15,614.85, that being the amount of the principal and interest due on the three notes of $3,320, $2,360 and $3,540, to wit: $43,275.60 less the sum of $27,660.75, being the amount allowed by the Court as an offset against plaintiff on account of his bond—that is, the amount of 16,168 acres of land at one dollar per acre, with legal interest from June 2d, 1854, when plaintiff bound himself to reconvey.

Plaintiff's motion for new trial having been overruled, he appeals from so much of the decree as allows an offset.

*Gregory Yale,* for Appellant.

I.   The recording of the mortgage is sufficient notice to the subsequent incumbrancers of the rate of interest expressed in the notes. The terms of the mortgage held by plaintiff put the parties claiming adverse to it upon inquiry.   The mortgage describes the rate of interest drawn by the notes by stating their date, the amount, the time when payable, the names of the payees, and the place at which they are payable.   The interest is referred to in the mortgage in connection with the authority to sell upon default of payment of principal and interest, and also in the covenant of the plaintiff to pay over the surplus after paying himself the principal and interest.   There was enough expressed in the mortgage as to interest—the rate not being named—to put defendants on inquiry as to the rate of interest called for by the notes.   (Act of 1850, concerning Conveyances, sec. 25.)   The notice which the registration imparts is the same as actual notice of the contents of the instrument; and where it is necessary for a party to make further inquiry of a fact to complete his title, this duty is imposed upon him as positively under the effect of the registry as if he had read the instrument itself.   (1 Story's Eq. Jur. sec. 400 ; 4 Kent, 189 ; 2 Sug. Vend. 1052 ; *Pike* v. *Collins*, 33 Me. 45 ; *Jackson* v. *Neely*, 10 Johns. ; *Slaughter* v. *Pasco*, 5 Conn. 442 ; *Crane* v. *Deming*, 7 Id. 388 ; *Booth* v. *Barman*, 9 Id. 286 ; *Dean* v. *Lezardi*, 24 Miss. 424 ; *Carr* v. *Hilton*, 1 Curtis' C. C. 390 ; 1 Hilliard on Mort. 195, sec. 74 ; *Garler* v. *Henry*, 6 Watts. 57 ; *Richards* v. *Holmes*, 18 How. 145.)

The cases relied on by defendants do not conflict with the rule laid down in the foregoing authorities. *Frost* v. *Beekman*, 1 John. Ch. and 18 John., and the case in 4 Rob. La., are cases where the amount was recorded by mistake different from the sum named in the mortgage. The mistake was chargeable upon the vendor, and was a question between him and the first mortgagee. The case in 7 John. Ch. was one where an attempt was made to foreclose on a fourth bond bearing interest, where three bonds not bearing interest were alone secured by the mortgage. The bill was brought on the fourth bond, under a private agreement between the mortgagor and the mortgagee. The Court held that the private agreement, of which no notice is imparted to the second mortgagee, is not binding upon him.

Ricketson *v.* Richardson.

The cases in 14 Conn. and 2 Annual La. are cases where the amount is omitted entirely. The Louisiana case is expressly decided under the language of the code of that State.

II. In answer to the counter-claim of $27,000 set up under the conveyance of the 16,168 acres of the Albion rancho, on the second of June, 1853, and the covenant to reconvey by the plaintiff to Avis, we reply:

1. That none of the defendants, except Torres, the executor, could avail themselves of such a claim, if legal, in favor of the estate.

Throckmorton claims, in his answer, the right to set off the $27,000 upon two grounds: First. That his deed of the ninth of February, 1856, conveys to him all the existing right, title and interest, and all title in "expectancy." This term can have no such operation. The word is defined to have a relation to or dependence on something future. (1 Bouv. Dic. 501.) "Estates are of two sorts—either in possession, sometimes called estates executed; or in expectancy, which are executory. Expectancies are, first, created by the parties, called a remainder; or by act of law, called a reversion." (Id.) "A bargain created in relation to an expectancy is, in general, considered invalid," (Id.) and authorities cited. Second. That a covenant runs with the land, and therefore, he can set off the bond. The "modern covenants for title, intended for the benefit of the land, have been held to run with it, for the benefit of the assignee; that is to say, the owner of the land, for the time being, is entitled to the benefit of all the warranties and covenants which the prior owners in the chain of title may have given." (Rawle on Cov. Title, 335.) And this is the principle made to apply to a penal bond to reconvey by one who never gave a covenant for title. The position is made more absurd when we know that in respect to a covenant's running with the land, " if a breach had occurred in the lifetime of the testator, they then become choses in action, incapable of transmission or descent, and whose right survived to the executor alone." (Id.) The breach in this case, had it been a covenant for title, without which it could not have run with the land, is said to have occurred on the second of June, 1854, from which day the plaintiff is charged with interest at ten per cent. per annum on $16,168.

Ricketson *v.* Richardson.

2. And that Torres, as the representative of Richardson, cannot avail himself of such a claim as a setoff to the mortgage, for the following reasons, as matters of fact:

First. The plaintiff did not convey or appropriate the land or any part of it, within the year, to his own use. There is no pretense that he made any conveyance of this property before the deed of the nineteenth of April, 1854, to Compton & Davidson.

Second. He was directed by Richardson, within the year, to reconvey it to his (Richardson's) use. The proof of this is found in the direction contained in Avis' letter to the plaintiff, of the twenty-ninth of September, 1853, while Avis was still acting as Richardson's agent.

This letter was written by Avis while acting as agent for Richardson. If his power to make the conveyance, and to accept the bond to reconvey, be admitted, his power to recall the act must be admitted. His authority under the letter of attorney is unlimited. He directs a reconveyance to himself, according to the terms of the bond. The reconveyance was not made in that form. As agent he could not appropriate Richardson's land; but for the purpose of convenience in the transaction of the business of his agency, he might well make such a stipulation under his ample authority. This was purely a matter between him and Richardson, who conferred the authority, and bestowed the opportunity upon the agent of compromising the principal, had he thought fit. But this he did not do while Richardson lived. This letter, therefore, operated as a demand for the reconveyance before the year was out. But besides this, immediate authority was given by Avis, as the legal holder of the bond, to the plaintiff, on the nineteenth of April, 1854, within the year, to reconvey the land to Compton & Davidson, or to any one else whom Richardson might name.

Either the letter of the twenty-ninth of September, 1853, or the authorization of the nineteenth of April, 1854, was a legal direction to reconvey the land; coupling the two together, the first while Avis was the agent, and the second disposing of the legal claim to the reconveyance to him personally, as covenanted, leaves no doubt of the right to reconvey within the year.

Third. He did actually and unconditionally convey it, within the

Ricketson *v.* Richardson.

year, to Richardson's use, by good and sufficient deed, on the nineteenth of April, 1854, to Compton & Davidson, who were Richardson's agents, having in charge all his affairs ; and who never claimed any right to the land under this deed, except for the use of Richardson.

We next find this deed in the possession of Hackett, in New York, when he presented the bond, to which he claims title, to the plaintiff, and demanded the conveyance he received.

The execution and delivery of this deed, and its acceptance by Compton & Davidson, as the agents of Richardson, without qualification or claim by Avis, or by the plaintiff, was a perfect compliance with the terms of the bond, and reinvested Richardson with the title.

Notwithstanding these facts and the inevitable legal result, going to discharge the plaintiff from all liability on the bond, the plaintiff is held responsible for not conveying within the year, after the agents of Richardson had had possession of the deed, for Richardson's use, for more than three years, without objection as to form or otherwise, and retained that possession not only until their agency had ceased, but until the paper was tortiously removed in their absence from the State.

3. Richardson, before the delivery of the deed, and while holding the equitable title, but after Avis had directed the conveyance by the letter of the twenty-ninth of September, 1853, disposed of the same land, provisionally, in several ways :

1st. By his will of the fifteenth of October, 1853.

2d. He mortgaged the same land to Compton & Davidson by his mortgages of the thirteenth of October, 1853, of thirtieth of November, 1853, and of the first of February, 1854, under which Davidson, Hood and Walkinshaw claim by assignment, without excepting the 16,168 acres.

3d. He professes to convey absolutely the equity of redemption to the whole ranch to Throckmorton, by deed of the ninth of February, 1856, long after the reconveyance to Compton & Davidson by the plaintiff, without the 16,168 acres being excepted, or referred to, and by certain other exceptions in the same conveyance.

4. The 16,168 acres were pledged to the plaintiff as security

for the payment of the $5,000 note of June 11th, 1853, the payment of which he had a right to insist upon before he reconveyed under the bond of the second of June.

III.   As a matter of law, the executor could not avail himself of that transaction as a counter claim to the notes secured by the mortgage sued on, for the following reasons:

1. It did not exist at the commencement of the action, in the absence of a demand for reconveyance, or an election to take the price per acre.   (Prac. Act, sec. 47.)   If the demands by Avis were legal, then the reconveyance was made under them.   If they were not legal, then no demand was ever made.   The lapse of one year from the date of the bond did not create a money demand in the fixed sum of $16,168, unless the plaintiff had refused to convey upon a proper demand.   Richardson had the election, which he never exercised, except through Avis, of demanding the land, or suing for damages on the covenant.   Nor has his executor made such election, and no cause of action could exist until then; there must have been an offer and a refusal—" a disagreement."   The reconveyance having been made, however, neither Richardson nor his executor was required to do so vain a thing.

2. It did not exist before the commencement of the action, in the absence of the conversion of the land to plaintiff's own use, notwithstanding the expiration of the year.

No such conversion to his own use was ever made, that to Hackett having been made under fraudulent pretenses.

3d. The bond was a penal obligation and the damages unliquidated, and as such, not the subject of setoff at law, or in equity. (2 Hilliard on Mort. 23, C. and cases; Sedg. on Dam. 428.)

The measure of damages, under the penalty of the bond, would have been the injury sustained by the obligee in a failure on the part of the plaintiff to reconvey after demand; for instance, if Avis could have sold the land for Richardson, at a certain price, with the reconveyance, but was defeated in such sale in consequence of the outstanding title, and sold after a reconveyance at a less price, the measure of damages would have been the difference between the two prices, and of this strict proof would be required. No such proof is offered.

IV.   The conveyance of this land by the plaintiff to Hackett could not be the foundation of a counter claim, either in favor of the executor, or of the other defendants, for the following reasons :

1. The conveyance was made twenty-three months after the commencement of the action.   An offset in equity is not allowed as a matter of course, the defendants being left to their legal remedy, unless some peculiar equity intervenes, which justifies the action of the Court.   But the legal right must exist at the beginning of the suit, as at law.

2. It was made upon a fraudulent and antedated assignment of the bond by Avis, purporting to bear date prior to the requisition of Avis to the plaintiff to reconvey to Richardson.

From the foregoing positions it results, that the Court erred in charging the plaintiff with the $27,000 as an offset to the debt due on the notes secured by the mortgage.

V.   It is no where asserted that Richardson had a valid title to the Albion ranch, in order to charge the plaintiff with the sum of $27,000 as a deduction from the notes, for the 16,168 acres, at one dollar per acre, and interest on the same after the expiration of one year from the date of the bond.

*E. L. Goold,* for Respondents Throckmorton, Moss and Torres, Executor.

I.   The mortgage imparts notice of no interest beyond the legal rate, ten per centum per annum.   The plaintiff contends that we should have looked further and beyond the record, in order to ascertain if the notes bore a rate of interest different from that which the law prescribes.   We do not think so.   The statute is plain. It says the record shall impart notice.   Notice of what?   Not of certain facts from which others may be possibly tracked out, but of the contents of the record.   (Wood's Dig. 103.)

7 Johns. Ch. 14 explains the whole doctrine: "A prior mortgagee is not allowed to enlarge his demand beyond what appears on the record, in consequence of a separate agreement between him and the mortgagor, to the prejudice of a second mortgagee, who had no notice or information at the time he took his mortgage of the agreement between the mortgagor and the first mortgagee,

by which the latter claimed interest, when the bond and mortgage were, on the face of them, without interest."

In the case cited, the interest did not exist, that is to say, on paper. In the case at bar it did. But in contemplation of law, that makes not the slightest difference, unless actual notice (knowledge) be proved, for "*De non apparentibus et non existentibus idem est ratio.*" Any other doctrine would defeat the whole purpose of the registry laws.

As a general rule, interest cannot be recovered unless " authorized by statute." (*Dennis* v. *Greely,* 1 Cal. 422.) "And the law will not tolerate the payment of more than legal interest, in the absence of an express agreement, in writing, to pay more." (*Crosby* v. *McDermott,* 7 Cal. 146.) Where no rate of interest is agreed on, the statute rate, ten per cent., takes effect. (*Kohler* v. *Smith,* 2 Cal. 537.) Proof of the current rate of interest being four per cent. per month cannot be received. (*Crosby* v. *McDermott,* cited above.)

The notes sued on were negotiable. To whom should the inquirer apply for information concerning them? To the debtor? He is the very man most interested in diminishing the appearance of incumbrances, for the more he should swell them, the less credit could he obtain upon the security. To the creditor? Where look for him? A negotiable note is as easily transferred in Europe as here; and no sane man, if he found the notes had once gone out of the State, would attempt to track them. It happens in this very case that Ricketson lived in Boston. Before he could be heard from, the party could turn his money over a dozen times; and therefore, the direct and legitimate effect of the rule contended for would be to check mercantile operations and hamper commerce.

Some of the cases cited by plaintiff amount to no more than a recognition of the rule that that is certain which can be rendered certain; and that a mortgage for future advances is good. With regard to the latter, it is enough to say that such mortgages being legally authorized, the party about to deal cannot be led astray by them, for they do not purport to disclose the sum secured, and obviously cannot, as neither mortgagor nor mortgagee knows what it is. And with regard to the former rule, it has no application to

the case. When the statute requires the mortgagee to display upon the public records of the country the contents of his mortgage, it does not mean he shall suppress a material portion of those contents, and then have all the benefit of disclosing them. (See 4 Conn. 158; 14 Id. 77; 1 Johns. Ch. 298, 300, 564; 2 Id. 189; 7 Id. 14; 2 Ann. 790; 4 Rob. 5.)

Here is what purports to be a full description of the notes. It is apparently given with care, and is well calculated to mislead any one, so far as the amount of interest is concerned. For if the description had been meagre, the argument that the inquirer should search beyond the record would at least be plausible. But when the description is full and drawn with care, the searcher is led to believe he has all the facts before him—otherwise the record would be wholly unnecessary.

In truth, however, the question as to putting upon inquiry does not arise in this case. What is interest? *Prima facie* it is ten per cent. per annum. If, then, the prior incumbrancer had put that rate upon record, how could he be said to have told us more emphatically than he has done that ten per cent. was the rate he exacted. Mere interest is ten per cent., says the law. Mere interest is precisely that which the notes were said to bear. We were, then, not put upon inquiry. There was nothing to inquire into. There was no reason to doubt. If the notes had borne interest, being silent as to the rate, the mortgage would have read precisely as it now reads. And any inquirer would be bound to presume that those notes were made payable with mere interest, and nothing beyond it.

Being informed by the record that the lawful rate was the rate binding between the parties, far from being put upon inquiry, the subsequent incumbrancer is put off inquiry.

Our statute seems to differ from that of the other States. The language appears designed to exclude the idea that the registry is to be used as a sort of directory by which men are to be sent to look for information, but rather to be itself a faithful repository of the intelligence of which they may be in need, and which, when placed there, completely binds them, whether they have availed themselves of it or not. (*Mesick* v. *Sunderland,* 6 Cal. 315; *Call* v. *Hastings,* 3 Id. 183.)

" We think the design and intention of this act was to give constructive notice of the facts which appeared upon the face of the record, and that it could not operate as notice of such portions of the deed as through mistake or carelessness are not entered of record." ( *Chamberlain* v. *Bell,* 7 Cal. 294; *Stafford* v. *Lick,* Id. 489.)

II.   On June 2d, 1853, Richardson, being then the owner of the Albion ranch, executed a conveyance of 16,168 acres of the land to Ricketson, the plaintiff, in trust, for the purpose of sale. The deed was executed by W. P. Avis, then Richardson's agent, and was in form unconditional.

The purpose for which this conveyance was made is shown in the bond by the terms of which Ricketson, on the day of the execution of this deed, bound himself, not to Richardson, but to the agent, Avis, in the sum of $32,000, to make sale of the land within one year, or account for it at one dollar per acre, viz: the sum of $16,168.

Now, on June 2d, 1854, the plaintiff was bound to have sold the land, or then to return it to its owner.   The bond in question distinctly recited that he took it " for the purpose of effecting sales, if possible."

By the terms of the bond, Richardson, on June 2d, 1854, had a right to elect to charge complainant with the value of the Albion land, $16,168, and that right descended to Manuel Torres, his executor.   Throckmorton has a right equally with the executor to plead this offset.   He is the owner of the Saucelito rancho, and therefore, if he had no ownership whatever in the Albion, he has a right, when called on to surrender up the Saucelito rancho to satisfy a pretended debt of Richardson's, to allege and prove any fact showing that the debt has been paid, or extinguished by an offset, or in any way, no matter how.   This right he has in common with the mortgagees, his codefendants ; and it results from the mere fact that he has an interest in the property itself.

The plaintiff argues that he has offered to return the 16,168 acres of the Albion rancho.   The plaintiff took that land in trust. He was bound to account for it in one year.   He failed to do so. In 1857, he sold it, but rendered no account of the sale.   By failing to account at the end of one year, he became indebted to Rich-

ardson in the assessed value, $16,168.   A trustee having agreed to account at a certain rate, will not be allowed, after the time for accounting has elapsed, or a sale has been actually made, to buy up the property and force it upon the *cestui que trust*.   For this would enable an agent, in case the property should fall in value, to avail himself of the change in price, and thus speculate upon his principal.

*Sol. A. Sharp*, for Respondents, Hood, Davidson and Young, Executor, etc.

I.   It does not appear that this claim of plaintiff was ever presented to the executor, accompanied by the affidavit required by law.   It is said the executor is estopped from urging this.   If that were so, the other defendants are not.   As against them the complainant must prove all the facts necessary to a recovery.

An administrator or executor cannot waive the presentation of a claim or the affidavit required by the statute.   They are creatures of the law, and get their powers from the law.

Without this affidavit and presentation, and proof of it on the trial, no action can be maintained or recovery had on any claim. (Act relative to Estates, secs. 136, 138.)   Mortgages and liens form no exception to the rule of section one hundred and thirty-six. (*Ellisen* v. *Halleck*, 6 Cal. 386 ; *Pico* v. *De la Guerra*, 18 Id. 425–431 ; *Quivey* v. *Hall*, 19 Id. 97 ; *Graham* v. *Vining*, 2 Tex. 433.)

.   The stipulation of counsel does not waive presentation, but simply consents that plaintiff may file his amended bill, making Torres a party, and setting up presentation to him and his rejection, probate of will, etc., and then provides for waiving process and setting the cause for trial.   The amended bill sets up the death of Richardson, probate, presentation to Torres, executor, etc.   This was not served on anybody, Torres having waived process.   There is nothing in the record showing the presentation.

II.   As against subsequent mortgages, the Ricketson mortgage of record cannot be made to bear more than the rate of interest fixed by law.   (*Frost* v. *Beekman*, 1 Johns. Ch. 288, 293, 297 ;

*Dey* v. *Dunham*, 2 Id. 189; *St. Andrews' Church* v. *Tompkins*, 7 Id. 13, 16; *Mesick* v. *Sunderland*, 6 Cal. 315; 14 Conn. 77.)

III. In considering the right to set off the price or value of the Albion tract, and the authorities and rules governing this question, it is to be observed that there was no such thing as a setoff known to the old common law Courts.

On the other hand, the privilege of presenting a counter claim has always been recognized in equity; and they who appeal to equity must do equity.

The conveyance was made by Richardson to plaintiff in trust, to be converted into money. If Ricketson held no mortgage against the estate of Richardson, it would now be a strictly money demand in favor of the estate and against Ricketson, and such a demand as would be within the particular jurisdiction of equity, by way of compelling an accounting either for the price fixed, $16,168, or the value of the land, at the option of the representative of the estate. We go farther, and insist that from the nature of the transaction the conveyance by the trustee operated *pro tanto* a payment to himself of so much of the debt due to him from Richardson. But he has not only converted the trust estate and retained its proceeds, but he is beyond the jurisdiction and insolvent, and he now asserts a large claim against an estate, the money of which he has, and for the recovery of which the estate has no remedy, it is said, even by setoff. If, according to the rule in equity, the land was the property of Richardson, although the legal title was in Ricketson, so by the same rule, the land converted into money, the money would be in equity the money of Richardson, although the possession was in Ricketson. Equity follows the subject of a trust, and always holds the property, whether lands or money, to be in the beneficiary; and according to well established rule, the beneficiary has the right to look for the price according to the contract terms of the trust, (one dollar per acre) or if the trust has been violated, then to the value of the estate converted as the price. The claim of Ricketson is a *money* demand, the mortgage *debt*. The claim of the estate against Ricketson is for the price or value of the land, and is a money demand, and according to the modern rule of setoff, as administered in the common law Courts, could be set up as a defense.

Now as to who should set up this setoff.    The representative of the estate should do it, as executor or administrator: at the same time, the right thereto passes to the successors in interest of Richardson to the estate charged.

It is not merely the right of the executor of Richardson to call for this accounting, it is his sworn duty.    He is an officer acting under the direction, and if necessary, the mandate of the Courts. It is his office to protect and defend the estate, not for his own benefit, not merely for the benefit of the heirs, but for the benefit of all creditors.

Plaintiff's counsel, in discussing this question of offset, relies greatly upon the deed of April 19th, 1854, of Ricketson to Compton and Davidson, which he says was made at the request of Avis and for the use of Richardson.    This deed may have been so made, but there is no evidence to show that it was made for the use of Richardson.    Nor does it appear that Richardson ever requested plaintiff to convey the land to Lecompt, or Compton and Davidson, or even consented to or had any knowledge in relation to the deed.    Avis, in his letter to Ricketson of September 29th, 1853, says that Compton and Davidson request an immediate conveyance of the 16,168 acres of land, and in the same letter he requests the deed to be made to him, Avis, and to be sent, with the note for $5,000, to Mr. Wood, with whom a settlement will be made, etc.

The notes—one for $5,000, the other for $3,369.46—are barred, not only by the Probate Act for want of presentation, but also by the general Statute of Limitations, and neither was ever a lien upon the mortgage premises.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This was a bill filed by plaintiff in February, 1856, against one Wm. A. Richardson and others for the foreclosure of a certain mortgage, made by Richardson in his lifetime, of a rancho in Marin county, called the Saucelito Rancho, containing three square leagues, more or less, claimed under a Mexican grant.    The mortgage, as alleged, was given to secure three promissory notes, dated

twenty-fifth March, 1852—one to the order of Jeremiah Clarke for $3,320, one to the order of L. Etoubleau for $2,360, one to the order of Charles Myer for $3,540—each payable six months after date, with interest at the rate of five per cent. per month, except Clarke's, which was at the rate of six per cent. The bill charges that these notes were assigned, before maturity and for value, to Alfred J. Ellis, and that on the twenty-fifth of September, 1852, by agreement, the rate of interest was reduced to three and one-half per cent. per month ; and that Ellis, on the twenty-fifth of March, 1853, assigned the notes and mortgage to the plaintiff, and that the mortgage was duly recorded, etc. The other defendants are made parties upon the general averment that they claim some interest in the mortgaged premises. Personal service of process was had on Richardson. The bill was verified, and *lis pendens* filed. On the twenty-eighth of July, 1857, a supplemental bill was filed, in which is alleged the death of Richardson, leaving a will, of which one Manuel Torres was executor ; and that the claim was presented to him, verified, and was rejected in writing on the sixteenth of March, 1857. Suit was revived in the name of Torres, executor, and stipulation entered into by counsel of Torres with plaintiff, consenting to revival, waiving process, and admitting all the allegations in the supplemental complaint to be true.

Afterwards, and after certain proceedings—among them a judgment of this Court on appeal—an amended complaint was filed, which set up, among other things, that Richardson requested Ellis to obtain an indorsement of the notes, and an assignment of the mortgage, and to extend the time of payment and reduce the interest ; that the rate of interest due on the notes and mortgage was actually known to the defendants, apart from the face of the mortgage ; that Richardson owed plaintiff a certain other note of $5,000, dated on the eleventh of June, 1853, with interest at the rate of five per cent. per month ; that Throckmorton only held the premises in trust for Richardson, and as agent, subject to the incumbrances, under a deed of August 7th, 1855, which is exhibited ; and that other deeds (in the record) of February 9th, 1856, to Throckmorton, were executed to him as agent and for like purposes, and that Throckmorton paid no consideration to Richardson on these accounts, and that he never paid off these incumbrances.

Torres, the executor, in June, 1859, answered the amended bill, denying the indebtedness on the notes ; he avers that they were paid, as follows : that Richardson, on the second of June, 1858, by one Avis, his attorney in fact, conveyed to the plaintiff 16,168 acres of the Albion Rancho, in Mendocino county, in trust for the plaintiff, for the purpose of sale on account of Richardson, and if not sold within twelve months from the time of the conveyance, to be reconveyed to Richardson ; and that on the same day plaintiff executed a bond to Avis, conditioned to pay, at the rate of one dollar per acre, in case he did not reconvey within the year ; and that Avis held this bond as agent of Richardson without personal interest in himself ; that he did not reconvey, but converted the land to his own use ; and on the eighteenth of November, 1857, conveyed the same to one Hackett ; and that he has not paid the $16,168, etc. ; that plaintiff has got this bond through the fraud of the holder and Avis, and that plaintiff is a nonresident and is insolvent. Defendant claims this sum as an offset to the plaintiff's demand, and prays for counter judgment for excess, etc.

Throckmorton filed several answers, in which he admits the making of the notes and mortgages, but avers there is no mention of the rate of interest in the mortgages of record, and knows only the rate from the record ; claims that on the seventh of August, 1855, he became the purchaser, by good and sufficient deed of conveyance, of all the right, title and interest of Richardson and wife, and his son Stephen, and his daughter Mariana Torres, and her husband Manuel, to the premises ; that by the grant, the land was vested in Richardson and family, and afterwards the land was partitioned—giving the mode, etc.—of which partitioned parcels the different members took possession ; sets up the same facts in regard to the Albion Rancho as in Torres' answer, and that the land was worth three dollars an acre ; sets up that the transfer of the notes and mortgages to Ellis amounted to payment; sets up that the bond of plaintiff was a covenant running with the land, and was transferred to him by deed of February 9th, 1856, under a provision of that deed (in the record) conveying all Richardson's interest in expectancy ; that plaintiff is insolvent, etc. ; that the $5,000 note in the bill was made without authority, etc.

It is not necessary to notice, for any purpose of this decision, the other answers.

The mortgage from Richardson to plaintiff contains this provision : " This conveyance is intended as a mortgage to secure the payment of three promissory notes, given by the party of the first part, bearing even date herewith, one of which notes is for the sum of two thousand three hundred and sixty dollars, ($2,360) and is payable to the order of L. Etoubleau, six months after the date thereof, at the banking house of Messrs. Tallant & Wilde, at San Francisco. Another of which notes is for the sum of three thousand five hundred and forty dollars, ($3,540) and is payable to the order of Charles Meyers, six months after the date thereof, at the banking house of Messrs. Tallant & Wilde, at San Francisco. And the other of which notes is for the sum of three thousand three hundred and twenty dollars, ($3,320) and is payable to the order of Jeremiah Clarke, six months after the date thereof, at the banking house of Messrs. Tallant & Wilde, at San Francisco. And if the payment of the amount of the said notes shall be made at maturity, then these presents shall become void, and the estate hereby granted shall cease and utterly determine ; but if default shall be made in the payment of the said sum of money, *or the interest, or any part thereof*, at the times hereinbefore specified for the payment thereof, the said party of the first part in such case does hereby authorize and fully empower the said Jeremiah Clarke, his heirs, executors, administrators and assigns, to sell the said hereby granted premises at public auction, and convey the same to the purchasers in fee simple, and out of the money arising from such sale to retain the principal and interest which shall then be due on the said note, together with all costs and charges, and pay the overplus, if any, to the said party of the first part, his heirs, executors, administrators or assigns."

The bond executed by plaintiff to Avis is as follows:

" Know all men by these presents, that I, Barton Ricketson, of the city of San Francisco and county of San Francisco, State of California, am firmly bound and held to Wm. Parsons Avis, of the city and county aforesaid, in the sum of $32,000, money of the United States, to be paid to the said Wm. Parsons Avis, his

administrators or assigns, which payment, well and truly to be paid, I bind myself, my heirs, executors, administrators or assigns, firmly by these presents, sealed with my seal, this second day of June, A. D. 1853.

" The consideration of this obligation is such, that if the above bound Barton Ricketson, his heirs, executors, administrators or assigns, do well and truly pay or cause to be paid unto the above named Wm. Parsons Avis, his heirs, executors, administrators or assigns, the full sum of $16,168, like money aforesaid, together with one-half of the profits that may arise from a sale of 16,168 acres of land, situate and being a part or parcel of land on the Albion Rancho, as described in a deed this day made to the said Ricketson by Wm. A. Richardson, for the purpose of effecting sales, if possible—otherwise, said land to be reconveyed to the said Wm. Parsons Avis within one year from date—then this obligation to be void, otherwise to remain in full virtue.

"BARTON RICKETSON. [L. S.]

" Signed and sealed in the presence of B. H. Allen."

The bond was executed in consideration of a deed for 16,180 acres of the Albion Rancho, by Richardson, the object of the conveyance, as plaintiff contends, being to enable the plaintiff to sell the land, and to appropriate the proceeds, or so much as necessary, to the payment of the note of $5,000 mentioned in the pleadings. On the nineteenth of April, 1854, Avis made an indorsement upon this bond as follows : " It is agreed that Barton Ricketson may convey the land within described to Messrs. Compton & Davidson of San Francisco, or to whomsoever Wm. A. Richardson may appoint, after giving full satisfaction for a certain bond of which the within is a copy, and of all my claims in the premises.

"WILLIAM PARSONS AVIS.

" Witness: Chas. B. A. Adams."

It seems that, on the twenty-ninth of September, 1853, Avis, the attorney in fact for Richardson, addressed to the plaintiff a letter as follows :

"SAN FRANCISCO, September 29th, 1853.

" BARTON RICKETSON, ESQ., NEW BEDFORD :   DEAR SIR : The

affairs of Capt. Wm. A. Richardson are in process of liquidation by his friends, Messrs. Compton & Davidson, residents of this city, *who request an immediate reconveyance of the* 16,168 *acres of the Albion Rancho,* which I deeded to you in June last.   Please deed the same to me in accordance with the express understanding, as per bond, and inclose the same with the note for $5,000 to your agent, Mr. Wood, with whom a settlement will be made on its receipt.

" Very respectfully and truly yours, etc.,

" WILLIAM PARSONS AVIS."

And it seems from the proof that the plaintiff did, on the nineteenth of April, 1854, execute a deed of this Albion Rancho property to Compton & Davidson.

The main points made upon this state of facts are these :

1. That the mortgage of the plaintiff was good only, at most, for the sums expressly mentioned in the mortgage and legal interest on those sums, from the maturity of the notes, and not good, as against the vendees of Richardson, for the conventional interest mentioned in the notes.

2. That the facts in regard to the bond and the plaintiff's connection with the land, part of the Albion Rancho, and his failure to convey the same within the year, constitute a liability on his part to Richardson, or those representing him, or his privies in estate, for the amount of $16,180, which sum is to be set off against the mortgage as of the date when due.

Both of these propositions are plainly indefensible.

It is true the mortgage does not describe, or profess to describe with exactness, the debts secured by it.   It describes the notes, except as to the rate of interest, and provides that on default of payment of the sums mentioned, *with interest* at their maturity, then the mortgagee may sell the mortgaged premises.   It is not necessary that literal exactness should be used in describing the indebtedness in a mortgage security, if the description be correct as far as it goes, and if enough be said to direct the attention of parties dealing with the property to sources of correct and full information, provided that these persons be not deceived, or subject to be misled

by the language used.   It is true it has been held in some cases, that where a note is described in a mortgage, as it is made or recorded, as a note for a given sum, the mortgagee cannot set up, as against a subsequent purchaser or mortgagee, a different and larger debt; for the plain reason that a party dealing with or in respect to the property from an inspection of the mortgage, contracts in reference to its terms, and cannot be supposed to know or suspect that the real fact is different from the recorded account of it.   But the question here is wholly different.   Here, the mortgage not only asserts that the debts recited in it bear interest, but, at least inferentially, that they bear a conventional rate of interest; for the mortgage provides for the payment of the interest accruing at the time of the maturity of the debts; and there would be no interest due then by the mere force of the law, unless it had been expressly agreed that the notes should bear interest before they were due. Now, there is no intendment, under such laws as ours, that when interest is the subject of stipulation, any particular rate is agreed on.   If there were any such presumption, probably the inference would be that the interest so agreed on was the usual rate prevailing at the place of contract.   When it was seen that the notes were to bear, and did bear, interest, and that the property was pledged for the principal and that interest, and the names of the payees, the dates, etc., were given, it became the duty of a subsequent incumbrancer to inquire into the facts and ascertain them.   A mortgage may be given to secure future advances, and of course, the amount cannot be inserted in the mortgage ; and yet all such mortgages would be invalid according to the argument which would maintain the invalidity of this, viz: that the exact amount of the indebtedness was not shown upon the face of the paper itself.   So, if a mortgage were made as indemnity against contingent liabilities. The authorities which maintain the proposition, that this description is sufficient, are numerous.   (*Pike* v. *Collins*, 33 Me. 45 ; *Slaughter* v. *Pasco*, 5 Conn. 442 ; *Crane* v. *Deming*, 7 Id. 388 ; *Booth* v. *Brannan*, 9 Id. 286 ; *Dean* v. *De Lezardi*, 24 Miss. 424.)   And especially see *Richards* v. *Holmes*, (18 How. 145) which last case is singularly apposite in the facts to those here.   The Court says.: " It is true the deed does not purport to describe the *interest* which

is to become due on the note; but it clearly shows that it bore interest at *some rate*, and payable at some time or times, and this was sufficient to put a subsequent incumbrancer on inquiry as to *what the rate of interest* and the time or times of its payment were. The deed in effect declares, *and its record gives notice to subsequent purchasers*, that its purpose is to secure the payment of such interest as has been reserved by the note—the amount and date and time of payment of which is mentioned. We do not think the mere omission to describe in the deed *what that interest was to be* is a defect of which advantage can be taken by the complainants."

2. The other point is equally misconceived. It has been seen that Avis, although acting as agent for Richardson, took the bond in question from Ricketson in his own name, and that it imported a direct obligation of conditional reconveyance of the land to him, Avis, within the year. If Avis had a right to make this contract, it would seem he had the same right to discharge, modify or control its obligation. He might, from anything that we can perceive, have entirely released Ricketson from compliance. He directed him, as it seems by the letter which has been noticed, to reconvey to him; and though this was not done in form, the reason appears from the record, by very fair inference from established facts. It seems that Compton and Davidson were the agents as well as the mortgagees of Richardson, and had control of his affairs and property; and not only permission, but express authority were given to Ricketson to convey the property to them. Richardson, after this, holding, as he claimed, the equitable title to this land, or the right to call for a conveyance of it—the land not having been sold within the year—treated the land afterwards as his, as appears from his disposition of it in his subsequent deeds, and in his will. But there is another answer: It has been seen that by the agreement indorsed on the bond, Ricketson was empowered to convey the land to " Messrs. Compton and Davidson, of San Francisco, or to whomsoever Wm. A. Richardson may appoint." It is plausibly argued that this changed the terms of the bond, or dispensed so far with its obligations as to place the reconveyance in the hands or power of Richardson himself; and it seems that he exercised the privilege of directing the course of the title. But it is not neces-

sary to pass on this view, for we are clearly of the opinion that the claim upon this bond for the failure to make the reconveyance within the year, is a claim for unliquidated damages, and not a liability for a definite and ascertained sum.    Taking the whole transaction together in the light of surrounding circumstances, and it amounts to this : Richardson owed a sum of $5,000 to Ricketson ; he conveyed to Ricketson a tract of land—part of the Albion Rancho—partly for the purpose of paying this debt, and partly that the land might be sold in the Eastern States.    Avis was the acting agent of Richardson, and after making a deed in form absolute to Ricketson, he took the bond of Ricketson on the terms recited, and in a penalty of $32,000, payable to Avis himself, conditioned to pay to Avis $16,180—at least, if the land was sold, and one-half, also, of *the profits* arising from the sale of the lands—the object of the deed being to sell the land if possible ; but if the land could not be sold, then the land to be reconveyed within the year.    The whole matter, when reduced to the true understanding of the parties, is as if Richardson said to Ricketson : " You are to sell this land for the best price you can get, but not to sell for less than $16,180, or at the rate of a dollar an acre ; if you sell at all, I (Richardson) will be entitled to that price ; if you sell for more, we will divide between us the excess, less expense ; if you do not sell within the year, you are to reconvey to me."    If there was a breach of this promise to reconvey, the plaintiff was not liable to a fixed penalty of $16,180 for such breach, but would be liable only for the damages sustained by the breach, as in other cases of contract; for it is inconceivable that a man would absolutely bind himself to do an act, from the omission to do which no injury would necessarily result, and which act might be prevented by so many casualties or accidents, in such a sum.    Neither the object to be gained, nor the situation or relation of the parties, give any plausible color for supposing such to have been the intention of the parties ; and the words of the agreement do not annex any such penalty to the failure, and this design must be evidenced by the clearest proof before such a consequence can be effected.    The deed to Hackett, executed long after the death of Richardson, made and induced by the fraudulent acts of the agent, Avis, in the transfer of the land to him or

to Post (his predecessor) was not such a sale as was contemplated, even if a sale *then*, under any circumstances, would have been effectual to charge Ricketson with the penalty. It is too clear for argument that an unliquidated claim for damages is not the subject of offset, either equitable or legal, even if the damages in this case were not merely nominal.

3. There is nothing in the other points deserving of serious consideration. The record does not show that the notes and mortgage were not presented to the executor, and the mere omission to show that they were, in the face of the express admission in the first answer of Torres and the stipulation of the counsel, is not enough to induce us to affirm a judgment which evidently was rendered on different principles and without any reference to this circumstance. The statute does not require a presentation of the notes, etc., to be postponed until after the publication of notice by the executor, but the holder may anticipate such publication.

Decree reversed and cause remanded for a decree in pursuance of the principles of this opinion.